# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JACK R. JORDAN,

       *Plaintiff,*

vs.

       Case No. 12-2573

SPRINT NEXTEL CORPORATION, et al.,

       *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Jack R. Jordan brings a retaliation claim under § 806 of the Sarbanes-Oxley Act of 2002 ("SOX") (18 U.S.C. § 1514A) against Defendant Sprint Nextel Corporation, Inc. and Defendant Gary Foresee. He claims that Defendants constructively discharged him and retaliated against him in several other ways. Defendants seek dismissal of Plaintiff's lawsuit arguing that (1) the statute of limitations or statute of repose has run, (2) the doctrine of laches bars Plaintiff's claim, and (3) Plaintiff fails to adequately state a claim against Defendants. For reasons explained in more detail below, the Court denies in part and grants in part Defendants' motion. Several other motions are also before the Court, and the Court denies these motions for the reasons stated below.

# I.     Factual and Procedural Background

### The Parties

Plaintiff Jack R. Jordan worked as an attorney for Defendant Sprint[1] in the Corporate Secretary's Group of Sprint's Law Department from January 13, 2003 through April 25, 2005. Defendant Gary Forsee was the CEO of Sprint from approximately March 19, 2003 through October 8, 2007.  Forsee was also a member of Sprint's Board of Directors from August 13, 2005, through October 8, 2007, and the Chairman of Sprint's Board of Directors from approximately December 12, 2006 through October 8, 2007.

### Events Leading up to Jordan's Departure from Sprint

Under SEC rules, Sprint was allegedly required to describe in each of its proxy statements and annual reports any transaction or series of transactions in the previous year amounting to more than $60,000 directly or indirectly between Sprint and any executive officer or board member or their family members ("Related Party Transaction").  Sprint was required to disclose the dollar amount of each Related Party Transaction.  Sprint was also required to disclose transactions such as the purchase of a Sprint executive officer's residence, describing the principle followed in determining Sprint's purchase price and the name of the person making such determination.

Jordan reported to Claudia Toussaint, who was the Sprint Vice President in charge of the Corporate Secretary's Group of Sprint's Law Department.  Alternatively, Jordan could report to Sprint's General Counsel, Thomas Gerke.  In 2003, and effective through the remainder of Jordan's employment, Toussaint assigned Jordan primary responsibility for the following duties:

---

[1] On August 12, 2005, Sprint Corporation merged with Nextel Communications, Inc. to form Sprint Nextel Corporation.  The Court will simply refer to the corporate Defendant as Sprint.

(1) preparing annual questionnaires for officers and directors, including Related Party Transactions; (2) analyzing the results of officers' and directors' responses to those questionnaires; and (3) preparing Sprint's disclosures in SEC filings regarding Related Party Transactions and the strength of Sprint's corporate governance.

In 2003 and 2004, Sprint allegedly engaged in a number of transactions with certain executive officers, including Forsee, Bruce Hawthorne (Forsee's Chief Staff Officer), Howard Janzen, and Michael Stout. Sprint purchased the former residences of Forsee, Hawthorne, and Janzen in 2003 for $2,920,0000, $1,150,000, and $372,000, respectively.[2] In 2003, Janzen and Stout also received loans directly or indirectly from Sprint of $250,000 and $100,000, respectively. Jordan refers to the foregoing transactions as the "Relocation-Related Transactions."

In January and February 2004, Jordan believed that in connection with the proxy statement that Sprint later filed on March 16, 2004, Sprint officers were preparing to violate SEC rules requiring disclosures of Related Party Transactions that were related to executive officers' relocations in 2003. In late January and early February 2004, Jordan allegedly repeatedly informed Toussaint that SEC rules and regulations required executive officers' relocation-related Related Party Transactions to be disclosed in Sprint's 2004 proxy statement.

In 2004, Jordan did not know the specific details of the Relocation-Related Transactions. Jordan, however, knew of the benefits of Sprint's relocation program because he participated in it when he relocated to Kansas City in 2003, and he had received benefits and a loan in

---

[2] Sprint allegedly incurred losses on these residences in the amount of $720,000, $250,000, and $22,500 upon resale, respectively. It appears that the $250,000 loss on Hawthorne's residence occurred in 2003 and the $720,000 loss on Forsee's residence occurred in 2004. The $22,500 loss appears irrelevant because it is below the $60,000 threshold.

connection with his relocation. Jordan (a mid- level attorney) alleges that the amount of his relocation benefits were significantly higher than the amounts that other executive officers' reported relocation expenses were. In addition, Jordan alleges that his official notice from Sprint of the amount of his relocation benefits was significantly less than the amount Toussaint had previously informed Jordan that he had received. Thus, Jordan allegedly told Toussaint that he believed that Sprint's most highly compensated executives had received loans that were required to be disclosed in Sprint's 2004 proxy statement.

In late January 2004, Toussaint reassigned responsibility for addressing Sprint's March 2004 proxy statement disclosures of the 2003 Relocation-Related Transactions benefits from Jordan to another Sprint attorney. Toussaint did not inform Jordan of her decision to do so. Toussaint also allegedly excluded Jordan from all conversations with Sprint attorneys or outside counsel regarding any details of any Relocation-Related Transactions or Sprint's obligations to disclose them.

The disclosures of Related Party Transactions as they existed in the February 6, 2004, draft of Sprint's proxy statement failed to include any information about the Relocation-Related Transactions. But in a telephone conversation on or about February 7, 2004, among Toussaint, Jordan, and a third Sprint attorney, Toussaint allegedly pressured Jordan to agree that those disclosures were complete and accurate. Jordan told Toussaint that he could not make this statement until he had been given access to the information regarding the 2003 relocation benefits of senior executive officers. Toussaint allegedly discouraged Jordan from further opposition by claiming that she had obtained a memorandum from outside counsel explaining why additional disclosure was not required. Toussaint then allegedly told Jordan to cease working on those issues.

Sprint's 2004 proxy statement did not contain these Relocation-Related Transactions. The portion of Sprint's 2004 proxy statement that should have contained these disclosures was incorporated by reference into Sprint's 2003 annual report. On March 9, 2004, and November 9, 2004, Sprint's 2003 annual report was filed with the SEC.

In January 2005, Sprint's outside counsel informed Jordan that SEC rules required Sprint's 2005 joint proxy statement/prospectus to include disclosures of Related Party Transactions for the years 2002 through 2004. In early January 2004 and 2005, a Director and Officer Questionnaire was forwarded to Forsee asking him to provide information to Jordan, including all Related Party Transactions in 2003. Forsee did not include any information about his Relocation-Related Transactions.

In February 2005, Jordan asked Forsee to provide information to Jordan or allow Jordan access to information specifically about the Relocation-Related Transaction in connection with the preparation of Sprint's 2005 joint proxy statement/prospectus. Forsee allegedly withheld this information.

In February 2005, Jordan informed Gerke about Jordan's concerns that Sprint had violated in 2004, and was preparing to violate in 2005, SEC rules in connection with the Relocation-Related Transactions. Jordan allegedly informed Gerke that he was raising his concerns in compliance with his obligations under the SOX 307 Rules (Rules of Professional Responsibility for Attorneys). Gerke allegedly said "[t]hey didn't affect the price of Sprint stock. It's not like it was an $11 billion accounting fraud."[3]

---

[3] Doc. 24, ¶ 75, Amended Complaint.

Jordan met with Forsee on or about February 18, 2005, and informed him that he was doing so to comply with the requirements imposed on Jordan by the SOX 307 Rules. Forsee allegedly reacted with hostility. Jordan alleges that because of this February 18, 2005, meeting, Forsee caused Sprint's failure to disclose in 2004 the Relocation-Related Transactions.

On or about March 3, 2005, Jordan reported to Sprint's entire Board information about the alleged violations he had previously reported to Forsee and other Sprint officers. Jordan requested and was granted unpaid leave, in part, for the purpose of permitting him to pursue employment opportunities outside of Sprint. Jordan was on unpaid leave from March 4, 2005, until March 23, 2005.

On March 15, 2005, Sprint disclosed in an SEC filing some of the information that Forsee and others had failed to disclose to shareholders in 2004 and were attempting to allegedly conceal in 2005.[4] On March 18, 2005, Gerke allegedly disclosed to Jordan that Jordan's concerns had been substantiated regarding Sprint's failure in 2004 and its pending failure in 2005 to comply with SEC rules. Jordan believed that he could then return to work at Sprint and informed Sprint that he intended to return to work on March 23, 2005.

On or about March 20, 2005, Sprint officers suspended Jordan, instructing him to remain out of the office until April 12, 2005. On April 7, 8, and 10, Jordan forwarded to Sprint officers and directors additional information and analysis regarding alleged evidence of violations of SEC rules. On April 7, 2005, Jordan informed Gerke that he believed that Sprint officers were attempting to cause Sprint authorities to rely on information that they knew to be false and that

---

[4] Jordan alleges that even the information that Sprint did disclose on March 15, 2005, was false and misleading in material respects.

Forsee and other officers were attempting to fraudulently deprive Jordan from his employment at Sprint.

On April 11, 2005,[5] Sprint allegedly instructed Jordan that he must leave the Sprint campus and not return, discontinued Jordan's voicemail account, and terminated his electronic access to Sprint's document system. Jordan returned to work on April 12, 2005, but he alleges that within an hour of returning to work, he was suspended indefinitely and told that he was relieved of all duties. Jordan also claims that Forsee and Sprint officers seized Jordan's laptop computer to search and seize any information that would permit Sprint to terminate his employment.

On or about April 19, 2005, Jordan submitted notice to Gerke that he believed that he was being constructively discharged and stated he would resign effective April 25, 2005. Jordan claims that his belief in the SEC rules required him to resign. Sprint allegedly did not address Jordan's concerns and accepted Jordan's resignation on April 20, 2005. On May 10, 2005, Jordan wrote to Sprint's board of directors to inform them that he believed that he had been discharged in retaliation for his protected activities. Jordan alleges that Sprint engaged in multiple adverse actions against Jordan subsequent to Jordan's employment with Sprint. These alleged adverse actions include making disparaging statements to the SEC about Jordan.

### Jordan's Administrative Complaints and Proceedings

Jordan filed three complaints with the Occupational Safety and Health Administration ("OSHA"). On April 11, 2005, Jordan filed his first complaint ("*Jordan I*").[6] In this complaint,

---

[5] In the Amended Complaint, Jordan uses both April 11 and April 12 as the date he was allegedly indefinitely suspended.

[6] ALJ Case No. 2006-SOX-041.

Jordan alleged that Forsee and other Sprint officers were harassing Jordan and subjecting him to a hostile work environment. On April 28, 2005, Jordan supplemented *Jordan I* to allege that Forsee and other Sprint officers had prevented Jordan from returning to work since March 23, 2005, had caused Jordan to be suspended from work on April 12, 2005, and had constructively discharged Jordan from Sprint. On March 14, 2006, the Administrative Law Judge ("ALJ") assigned to *Jordan I* denied Defendants' Motion to Dismiss and/or for Summary Decision. The ALJ, however, granted Defendants' request to certify to the Department of Labor's Administrative Review Board ("ARB") the question of whether Jordan would be permitted to rely on attorney-client privileged information in an effort to substantiate his whistleblower retaliation allegations. The ALJ stayed the proceedings in *Jordan I* until the ARB issued its ruling upon that question. The ARB did not rule upon the question until September 30, 2009.

In the meantime, on March 20, 2006, Jordan filed a second complaint ("*Jordan II*")[7] with OSHA alleging that Forsee and other Sprint officers blacklisted or harassed Jordan by making false or misleading professionally damaging statements about Jordan. Those allegations included statements that Sprint allegedly made in a letter to the SEC in December 2005. On June 23, 2006, the ALJ consolidated *Jordan II* with *Jordan I* and stayed the proceedings in *Jordan II* until the ARB reached its decision in *Jordan I*.

Jordan filed a third complaint ("*Jordan III*")[8] with OSHA on January 19, 2010, alleging that Forsee and Sprint blacklisted Jordan, prevented his reinstatement at Sprint, and harassed Jordan by making false or misleading professionally damaging statements in a letter to the SEC in January 2010. On March 26, 2010, Jordan supplemented *Jordan III* by complaining that

---

[7] ALJ Case No. 2006-SOX-098.

[8] ALJ Case No. 2010-SOX-050.

Forsee and Sprint made inaccurate and damaging statements to the SEC in September and October 2008.

On March 8, 2010, *Jordan I* and *II* were reassigned to a different ALJ. On May 12, 2010, the ALJ ordered that proceedings in *Jordan I* and *II* would be held in abeyance until he ruled upon Defendants' motion to dismiss *Jordan II*. The ALJ granted Defendants' request to dismiss *Jordan II*. Jordan then timely petitioned the ARB to review the ALJ's decision, and the ARB granted Jordan's request.

On October 15, 2010, the ALJ ordered that *Jordan III* be consolidated with *Jordan I*. After the ALJ granted Defendants' motion to dismiss *Jordan III*,[9] Jordan petitioned the ARB to review that decision, which the ARB granted.

While *Jordan II* and *III* were pending ARB review, Jordan notified the ALJ that he intended to obtain *de novo* review of *Jordan I* in federal court. The ALJ dismissed *Jordan I*, but in the same order, the ALJ provided that *Jordan I* could be reinstated before the ALJ as long as Jordan did not file a complaint in federal court. Effective August 31, 2012, the ARB dismissed *Jordan II* and *III* so that Jordan could pursue all his claims together in federal district court.

### The Current Lawsuit

On August 30, 2012, Jordan filed a Complaint in the District of Kansas. Defendants filed a Motion to Dismiss. Jordan then filed a forty-six page Amended Complaint on March 22, 2013. Defendants withdrew their original Motion to Dismiss and filed another Motion to Dismiss (Doc. 29) based on the allegations in the Amended Complaint. Defendants assert that this Court should dismiss Plaintiff's Complaint because (1) the statute of repose and statute of limitations bars his

---

[9] The ALJ's dismissal of *Jordan III* occurred on December 6, 2010.

claims, (2) the doctrine of laches bars his claims, and (3) he fails to state a claim. The Court heard oral arguments on Defendants' Motion to Dismiss on January 27, 2014. After the Court heard oral arguments on Defendants' Motion to Dismiss, the parties filed several additional motions. Plaintiff filed a Motion for Sanctions (Doc. 56). Defendants filed a Motion to Strike Plaintiff's Motion for Sanctions or, in the Alternative, for an Extension of Their Response Deadline (Doc. 61).[10] The Court will first address Defendants' Motion to Dismiss and then address Plaintiff's Motion for Sanctions.

## II.     Defendants' Motion to Dismiss

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[11]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[12]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[13]  In determining whether a claim is facially

---

[10] Defendants also filed a Motion for Leave to File Notice of Supplemental Authority (Doc. 58) which the Court granted (Doc. 63).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[12] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[13] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

plausible, the court must draw on its judicial experience and common sense.[14]  All well-pleaded

facts in the complaint are assumed to be true and are viewed in the light most favorable to the

plaintiff.[15]  Allegations that merely state legal conclusions, however, need not be accepted as

true.[16]

### B.  Analysis

Defendants urge this Court to dismiss Plaintiff's claim for three reasons.  First, they contend

that the statute of limitations or statute of repose bars Plaintiff's claim.  Next, they assert that the

doctrine of laches precludes Plaintiff's claim.  Finally, they contend that Plaintiff fails to state a

claim.  The Court will address each argument.

### 1.  *Statute of Limitations*

Defendants first assert that Plaintiff's SOX whistleblower retaliation claim is barred by

the applicable statute of limitations and statute of repose.  Plaintiff disagrees.  There is an issue

as to what is the applicable statute of limitations on Plaintiff's retaliation claim.

As an initial matter, the Court must set forth how an individual proceeds with a retaliation

claim under 18 U.S.C. § 1514A, the statute under which Plaintiff brings his claim.

18 U.S.C. § 1514A(b)(1)(A)-(B) provides:

A person who alleges discharge or other discrimination by any person in violation
of subsection (a) may seek relief under subsection (c), by—

(A) Filing a complaint with the Secretary of Labor; or

---

[14] *Iqbal*, 556 U.S. at 678.

[15] *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[16] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

(B) If the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, bringing an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy.[17]

Thus, the statute requires an individual to first administratively file a complaint with the Secretary of Labor. It also contains a specific statute of limitations for filing administratively. 18 U.S.C. § 1514A(b)(2)(D), entitled "[s]tatute of limitations," provides that "[a]n action under paragraph (1) shall be commenced not later than 90 days after the date on which the violation occurs."[18] Plaintiff timely followed this procedure.

The issue then arises as to when a plaintiff may file in federal court. Section 1514A(b)(1)(B) provides that an individual may bring an action for de novo review in the appropriate district court of the United States "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant." But this provision appears to be permissive, not mandatory. That is, an individual may file a federal action after 180 days, but the statute does not require the individual to do so. Because there is not a specific statute of limitations contained in § 1514A as to when an individual must file in *federal* court, the issue is whether another statute of limitations is applicable.

Only two cases have specifically addressed the statute of limitations for filing a SOX whistleblower retaliation claim in federal court. In both of those cases, the court applied 28 U.S.C. § 1658, although the courts applied different subsections. 28 U.S.C. § 1658 provides:

---

[17] 18 U.S.C. § 1514A(b)(1)(A)-(B).

[18] The Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, effective July 22, 2010, increased the statute of limitations contained in § 1514A(b)(2)(D) from 90 days to 180 days. The revision is inapplicable in this case.

(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.[19]

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—

>    (1) 2 years after the discovery of the facts constituting the violation; or
>    (2) 5 years after such violation.

In *Ellis v. CommScope, Inc.*,[20] the Northern District of Texas determined that there were no federal court time constraints contained in 18 U.S.C. § 1514A, but the two-year statute of limitations or five-year statute of repose in § 1658(b) was applicable.[21] The court noted that the plaintiff's whistleblower retaliation claim related to his allegation that the company had engaged in fraud, and that the plaintiff discovered the facts constituting the alleged fraud violation in October of 2006. Because the plaintiff had complied with the requirements of § 1514A, and had filed in federal court nineteen months after discovering the alleged violation in October of 2006, the court found that plaintiff's suit was timely under § 1658(b).[22]

---

[19] Congress enacted this section on December 1, 1990.

[20] 2008 WL 4191482 (N.D. Tex. Sept. 11, 2008).

[21] *Id.* at *4. Another decision from the Northern District of Texas did not apply the two-year statute of limitations in § 1658(b). *See Candler v. URS Corp.*, 2013 WL 5353433 (N.D. Tex. Sept 25, 2013). The statute of limitations, however, is an affirmative defense, and in *Candler*, the defendant did not assert a statute of limitations argument. The defendant terminated the plaintiff on January 14, 2011, and she filed her complaint in federal court on March 29, 2013. *Id.* at *1. The defendant argued that the court did not have subject matter jurisdiction over the plaintiff's SOX whistleblower retaliation claim. The court disagreed and found that the two jurisdictional pre-conditions in § 1514A had been met. *Id.* at **3-4. First, the plaintiff had filed with the DOL and 180 days had passed without a decision from the DOL. *Id.* at *3. Second, the plaintiff had not engaged in bad faith delay. *Id.* at *4. Thus, the court determined that it had subject matter jurisdiction over the plaintiff's claim. *Id.* at *7.

[22] *Ellis*, 2008 WL 4191482, at *4.

Defendants argue for the application of § 1658(b) asserting that Plaintiff's claim "involves a claim of fraud" in connection with the SEC. The Court disagrees. Plaintiff does not bring a fraud, deceit, or manipulation claim under the SEC. Instead, he brings a whistleblower retaliation claim, pursuant to 18 U.S.C. § 1514A. Although his claim may relate to SEC rules, his claim is one for retaliation—not one for fraud.[23] Thus, § 1658(b)'s statute of limitations and statute of repose do not appear applicable to his SOX whistleblower retaliation claim.

The Eastern District of Virginia is the only other court specifically addressing the statute of limitations issue for a SOX whistleblower retaliation claim. In *Jones v. Southpeak Interactive Corp.*,[24] the Eastern District of Virginia found that 28 U.S.C. § 1658(a) was the relevant statute of limitations. The court in *Jones* took issue with the defendant's proposed application of § 1658(b) and noted:

> [A]pplication of 1658(b) to whistleblower retaliation suits creates a problem of textual analysis. Unlike all other private causes of action arising out of violations of the securities laws, a whistleblower retaliation claim involves *two* separate and distinct 'violations.' First, there must be a reasonable belief that there is violation of the securities law. Second, there must be a retaliatory personnel action, which itself is a violation of the law. If the court were to apply § 1658(b) to whistleblower claims, the first, and most logical, question would be: two years from *which* violation does the statute begin to run?
>
> A quite natural reading of the statute would suggest that it was two years from the "fraud . . . in contravention of a regulatory requirement." However, because a whistleblower claim does not accrue until the alleged retaliatory action is taken, it would be entirely plausible that, if the statute of limitations runs two years from the discovery of the fraud, the statute of limitations would be exhausted before the whistleblower cause of action accrued.[25]

---

[23] The Court notes that Defendants also contend that Plaintiff fails to allege fraud by Defendant and instead complains about mere "technical violations" by Defendant.

[24] 2013 WL 1155566 (E.D. Va. Mar. 19, 2013).

[25] *Id.* at *6.

Thus, the court determined that the result would be absurd, and § 1658(b) was inapplicable to SOX whistleblower retaliation claims.[26]  Instead, that court applied the general four-year statute of limitations in § 1658(a).[27]

The Court agrees that § 1658(b) is inapplicable to these claims, but also finds that § 1658(a) is not applicable to the facts of this case.  Section 1658(a) states that a four year statute of limitations is applicable to those cause of actions enacted after the date of § 1658's enactment (December 1, 1990).  18 U.S.C. § 1514A was enacted on July 30, 2002, and it would appear that § 1658(a) could be applicable to Plaintiff's cause of action.  Section 1658(a), however, also states that it is applicable *except as otherwise provided by law*.   The law is otherwise provided for in § 1514A.   Section 1514A sets forth a statute of limitations—claims must be filed administratively with the Secretary of Labor not later than 90 days after the date on which the violation occurs or after the employee becomes aware of the violation.[28]

---

[26] *Id*. at **6-7.

[27] *Id.*   It appears that the parties argued that either § 1658(a) or (b) was applicable.  Because the parties agreed that the claim was brought within the four-year statute of limitations contained in § 1658(a), the court stated that it "need not reach the question of tolling of the statute of limitations while the administrative remedies are being exhausted." *Id.* at *7.

[28] The process of bringing a SOX whistleblower retaliation claim appears to be similar, although there are differences, for bringing a claim under Title VII.[28]  Under Title VII, a person must first file with the administrative agency, and the statute of limitations for filing with the administrative agency is set forth in the statute.  *See* 42 U.S.C. § 2000e-5(e)(1) (stating that the time to administratively file is either 180 days or 300 days after the alleged unlawful employment practice occurred).  After filing with the administrative agency, an individual may bring a claim in federal court provided certain requirements are met.  *See* 42 U.S.C. § 2000e-5(f)(1) (setting forth a ninety day timeframe for individuals to file in federal court after receiving a notice of dismissal from the administrative agency).  *See also Rzepiennik v. Archstone-Smith, Inc.*, 331 F. App'x 584, 589 n. 4 (10th Cir. 2009) (noting the similarities of the charge filing provisions under SOX and Title VII).  In *Rzepiennik*, the Tenth Circuit determined that a plaintiff's SOX retaliation claim was untimely filed with the administrative agency because the plaintiff filed it after the 90-day time period provided for in § 1514A(b)(2)(D).  *Id.* at 590-91.  Thus, the Tenth Circuit found that the district court properly dismissed the claim for the plaintiff's failure to timely exhaust his administrative remedies.  *Id.*

In *Stone v. Instrumentation Laboratory Co.*,[29] the Fourth Circuit Court of Appeals addressed the statutory language in § 1514A and the right to de novo review in federal court. Although the Fourth Circuit discussed the statute in the context of subject matter jurisdiction—not in the context of statute of limitations—its reasoning is still instructive. In *Stone*, a whistleblower plaintiff sought de novo review in federal court during the time the ALJ's decision was being appealed to the ARB.[30] The defendant argued that the case should be dismissed because the ALJ's ruling was a final judgment, and thus, the plaintiff should be collaterally estopped from bringing the suit in federal court.[31] The case was appealed to the Fourth Circuit in which the circuit noted, "[t]he text of the statute is clear—if the DOL has not reached a final decision within the time period established by Congress, a complainant has the *statutory right* not merely to undefined relief in another forum, but to '*de novo* review' in federal district court. A plaintiff's right to pursue such relief is not circumscribed in any manner by the statute."[32] Because the Secretary did not reach a final decision within 180 days of the filing of the complaint and there was no showing of bad faith on behalf of the plaintiff, the Fourth Circuit found that the plaintiff could proceed in district court.[33]

Section 1514(A)(b)(2)(D) states that an action must be commenced with the Secretary of Labor not later than 90 days after the date of the violation. The plain language of

---

[29] 591 F.3d 239 (4th Cir. 2009).

[30] *Id.* at 242.

[31] *Id.*

[32] *Id.* at 245.

[33] *Id.* at 249-50. *But see Groncki v. AT&T Mobility, LLC*, 640 F. Supp. 2d 50 (D.D.C. 2009) (finding that even though the Secretary issued a final decision *after* the 180 day timeframe in § 1514A, the plaintiff's suit was untimely because the Secretary of Labor had in fact issued a final decision).

§ 1514A(b)(1)(B) also provides that an individual may bring an action for de novo review in the appropriate district court "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant." Thus, there appear to be two requirements for de novo review in federal court: (1) a final decision was not issued within 180 days of the filing of the complaint, and (2) the delay was not due to the claimant's bad faith. Plaintiff Jordan followed the administrative procedures. He filed a complaint with the Secretary of Labor (within the 90-day statute of limitations of the alleged violation). The Secretary did not issue a final decision within 180 days of the filing of the complaint, and there is no showing that the delay was due to Plaintiff's bad faith.[34] Thus, the plain language of the statute states that Plaintiff has the right to seek de novo review in federal court. Accordingly, the Court finds that Plaintiff's claim is not barred by the statute of limitations.

### 2. Laches

Defendants also argue that the doctrine of laches bars Plaintiff's claim. Laches is an affirmative defense, and the defendant must demonstrate that "there has been an unreasonable delay in asserting the claim and that the defendant was materially prejudiced by that delay."[35] In this case, the Court is considering Defendants' motion to dismiss and must rely upon the allegations in the complaint. Defendants' argument relies upon numerous statements taken from the administrative proceedings and in ALJ or ARB orders that were not provided to the Court nor

---

[34] Defendants contend that Plaintiff only decided to proceed in federal court to evade an adverse discovery order issued by the ALJ in *Jordan I*. The Court does not have a copy of the ALJ's Order and cannot make that determination. In addition, the Court must consider the allegations in the Amended Complaint, and from those allegations, the Court cannot conclude that Plaintiff engaged in bad faith delay.

[35] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002) (citation omitted).

were the allegations contained in Plaintiff's complaint. "The strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to a determination of laches."[36] Thus, the Court denies Defendants' motion to dismiss on this basis.

### 3.  Failure to State a Claim

Finally, Defendants argue that Plaintiff fails to state a claim.  Under 18 U.S.C. § 1514A, no covered company or an officer, employee, contractor, subcontractor, or agent of that covered company "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" because the employee engaged in protected activity as defined by SOX.  To establish a prima facie case under § 1514A, a plaintiff must show that (1) he engaged in protected activity, (2) the employer knew of the protected activity, (3) he suffered an adverse personnel action, and (4) his protected activity was a contributing factor in the adverse personnel action.[37]  Defendants assert that Plaintiff fails to (1) plead sufficient allegations of protected activity, (2) plead sufficient allegations of adverse employment action, and (3) state a claim against Defendant Forsee.

### a.  Whether Plaintiff Sufficiently Alleges Protected Activity

Defendants assert numerous reasons as to why they believe Plaintiff fails to adequately allege protected activity in his Amended Complaint.  The Court disagrees.[38]  Plaintiff specifically alleges that he complained to superiors in 2004 and 2005 that SEC rules and regulations required Related Party Transactions to be disclosed in Sprint's proxy statements and

---

[36] *Williams v. Clarence M. Kelley Det. Servs., Inc.*, 2012 WL 6085121, at *2 (D. Kan. Dec. 6, 2012) (citation omitted).

[37] *Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1129 (10th Cir. 2013).

[38] The Court will not set forth all of Defendants' asserted reasons.

that Sprint was failing to make these disclosures. Thus, Plaintiff's Amended Complaint includes sufficient factual allegations of protected activity.

### b. Whether Plaintiff Sufficiently Alleges Adverse Employment Action

Plaintiff alleges three instances of adverse employment action: (1) constructive discharge, (2) failure to rehire, and (3) Defendants' communications with the SEC in 2005, 2008, and 2010. Defendants contend that Plaintiff fails to adequately plead these alleged actions were adverse. The Court will address each in turn.

### 1. Constructive Discharge

With regard to Plaintiff's constructive discharge claim, Defendants argue that Plaintiff's allegations do not satisfy the strict standards for pleading constructive discharge. Although the bar for establishing a constructive discharge claim is quite high,[39] this case is at the pleading stage. The majority, if not all, of the cases that Defendants rely upon for support that Plaintiff cannot establish his constructive discharge claim are decisions that were made at the time of summary judgment. At the motion to dismiss stage, the Court must view the factual allegations, as stated in the Amended Complaint, in the light most favorable to Plaintiff.[40] Here, Plaintiff includes sufficient factual allegations that he was constructively discharged.[41] Accordingly, the Court denies Defendants' motion to dismiss on this basis.

---

[39] *Lockheed Martin*, 717 F.3d at 1133 (stating that "[c]onstructive discharge occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign.") (citation omitted). *See also Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004) (stating that "[w]orking conditions must be so severe that the plaintiff simply had no choice but to quit.").

[40] *Zinermon*, 494 U.S. at 118.

[41] Defendants argue that the allegations in the Amended Complaint demonstrate that Plaintiff freely quit his job. Although Plaintiff does include the allegation that he believed that SEC rules required him to resign, the Court must consider *all* of the factual allegations in the Amended Complaint. Plaintiff also alleges that Defendants took steps to isolate him from his co-workers, suspended him indefinitely by relieving him all of duties while not explaining why he was relieved of his duties, seized his laptop, and discontinued his voicemail. Because the Court

### 2. *Failure to Rehire*

Plaintiff also alleges that Defendants prevented Plaintiff's reinstatement. Yet, Plaintiff fails to include any allegations that there was a position available for which Plaintiff applied and was rejected. Plaintiff's general allegation that Defendant had advertised for and hired attorneys to perform responsibilities similar to Plaintiff's previous responsibilities is insufficient. Plaintiff does not allege that a position was open nor that he was rejected for any position. Generally, a failure to hire claim requires that the plaintiff apply for a position and be rejected for that position.[42] Because Plaintiff fails to allege these essential elements, he fails to state a claim.

### 3. *Defendants' Communications with the SEC*

Finally, Plaintiff alleges that Defendants' communications with the SEC in 2005, 2008, and 2010 constitute adverse employment actions.[43] Specifically, Plaintiff takes issue with (1) Defendants' request in 2005 for a no-action letter from the SEC to exclude Plaintiff's wife's

---

must consider the factual allegations as true, and consider those allegations in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff fails to adequately allege constructive discharge.

[42] *See, e.g., Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005) (stating that in the Title VII context a prima facie case of failure to hire requires the plaintiff (1) belong to a protected class, (2) apply for and being qualified for the position, (3) be rejected for the position, and (4) after rejection, the position remains open.). *See also Sundquist v. D.R. Horton, Inc.*, 2011 WL 3236110, at *6 (D. Colo. July 28, 2011) (applying those elements to a failure to rehire case). *See also Levi v. Anheuser Busch Cos. Inc.*, ARB Case No. 08-086, 2008-SOX-028, at *6 (Sept. 25, 2009) (ARB) (considering a failure to rehire claim under SOX and stating that "in a case dealing with an applicant and prospective employer, the successful complainant must show that he properly applied to an open position for which the company was seeking applicants and that he was qualified.").

[43] In evaluating a Rule 12(b)(6) motion to dismiss, a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008). A court, however, can take judicial notice of certain documents. *Tal v. Hogan*, 453 F. 3d 1244, 1265 n. 24 (10th Cir. 2006). "[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute." *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005). A court may take judicial notice of the SEC's filings because they are a matter of public record. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n. 5 (2d Cir. 2010).

In this case, Plaintiff alleges that Defendants' statements to the SEC in response to his shareholder proposals were adverse employment actions. Accordingly, the SEC's no-action letters are integral to Plaintiff's claim, and the Court has taken judicial notice of the SEC's filings.

shareholder proposal from Defendants' 2006 proxy materials; (2) Defendants' request in 2010 for a no-action letter from the SEC to exclude Plaintiff's shareholder proposal from Defendants' 2010 proxy materials, and (3) Defendants' request in 2008 asking the SEC to not file an amicus brief in support of Plaintiff with the ARB. All of these actions occurred subsequent to Plaintiff's employment with Defendant Sprint.

Defendants argue that their communications with the SEC were not adverse employment actions and did not interfere with the terms and conditions of Plaintiff's employment.[44] The Court agrees. As noted above, § 1514A(a) states that a company or an agent of that company may not harass or discriminate against an employee in the "terms and conditions of employment." Defendants' 2005 and 2010 requests for no-action letters related to Plaintiff's (and his wife's) shareholder proposals. Defendants' 2008 letter to the SEC requested that the SEC not file an amicus brief in support of Plaintiff.[45] Plaintiff was not employed by Defendant at the time of Defendants' communications with the SEC. There are no factual allegations that Defendants' communications with the SEC interfered with Plaintiff's actual or potential employment or the terms and conditions of employment.[46] There are no allegations that the SEC

_____

[44] Defendants assert several additional arguments as to why Plaintiff fails to adequately plead adverse employment action with respect to these SEC communications that the Court will not address.

[45] The Court notes that Defendants' request failed as the SEC did in fact file an amicus brief in support of Plaintiff's position with the ARB.

[46] *See Harvey v. Home Depot, Inc.,* Case No. 2004-SOX-36, 2004 WL 5840284, at *3 (May 28, 2004) (ALJ) (stating that "with the exception of blacklisting or other active interference with subsequent employment, the SOX employee protection provisions essentially shelter an employee from employment discrimination in retaliation for his or her protected activities, *while* the complainant is an employee of the respondent."). *See also Hunter v. Anheuser-Busch Cos., Inc.,* 2008-SOX-21, at *4 (April 29, 2008) (ALJ) (noting that "[f]or individuals who formerly worked for an offending company, prohibited activities include blacklisting, interference with subsequent employment, and failure to reinstate the individual upon a proper order issued under the Act."); *Pittman v. Siemens AG et al.,* Case No. 2007-SOX-15, 2007 WL 7135797, at *3 (July 26, 2007) (ALJ) (agreeing with the standard that

was Plaintiff's actual or potential employer. Although Plaintiff alleges that because the SEC's no-action letters are public "increases the likelihood that the negative statements therein about [Plaintiff] will be brought to the attention of [Plaintiff's] future co-workers or employers," this allegation is conclusory. In addition, Plaintiff does not allege that Defendants made any negative employment references nor alleges that any of Defendants' statements actually interfered with actual or potential employment.

In addition, Plaintiff's conclusory allegations that Defendant made these statements to "harass" or "blacklist" him do not suffice.[47] And even though Plaintiff alleges that Defendants' statements in the 2005, 2008, and 2010 letters were made to prevent his reinstatement with Defendant, this allegation is also conclusory. As noted above, Plaintiff does not allege that he ever applied (nor was rejected) for any available position with Defendant. Plaintiff fails to allege adverse employment actions with regard to Defendants' communications with the SEC because Defendants' letters do not affect the terms and conditions of Plaintiff's employment. Thus, the only adverse action that remains in the case is Plaintiff's constructive discharge claim.

---

SOX only protects employees from retaliation while employed by the company with the exception of blacklisting and interfering with subsequent employment).

    The parties disagree over whether the DOL's opinions are entitled to deference. For purposes of this Order, however, although the DOL's decisions are not binding on this Court, they may be entitled to some deference. *See Lockheed*, 717 F.3d at 113 (affording deference to the ARB's interpretation of § 1514A). *See also Welch v. Chao*, 536 F.3d 269, 276 n. 2 (4th Cir. 2008) ("*Chevron* deference is appropriate when it appears from the statutory circumstances that Congress would expect the agency to be able to speak with the force of law. . . . Congress explicitly delegated to the Secretary of Labor authority to enforce § 1514A by formal adjudication, and the Secretary has delegated her enforcement authority to the ARB. Thus, we afford deference to the ARB's interpretation of § 1514A of the Sarbanes-Oxley Act.") (quotation marks and citations omitted).

[47] Conclusory allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. In addition, at least one ALJ has determined that harassment is not an actionable retaliation claim if the plaintiff is no longer employed by the defendant because "the harassment comment was not an adverse *personnel or employment* action." *See Harvey*, 2004 WL 5840284, at *4. Plaintiff contends that "harassment" encompasses "blacklisting." The Court disagrees.

### c. Whether Plaintiff Sufficiently Alleged a Claim against Defendant Forsee

Finally, Defendants contend that Plaintiff fails to state a claim against Defendant Forsee because there are no allegations that Forsee personally undertook any actions against Plaintiff. Plaintiff responds by discussing Forsee's indemnification agreement with Sprint and by contending that this Court has personal jurisdiction over Forsee. Neither of Plaintiff's arguments is relevant to whether Plaintiff included any factual allegations that Forsee engaged in retaliation against Plaintiff. Thus, the Court dismisses Defendant Forsee from this action.[48]

### III. Plaintiff's Motion for Sanctions and Defendants' Motion to Strike

Plaintiff filed a Motion for Sanctions (Doc. 56).[49] Defendants filed a Motion to Strike Plaintiff's Motion for Sanctions or, in the Alternative, for an Extension of Their Response Deadline (Doc. 61).

The Court will first address Defendants' motion. "[T]here is no provision in the Federal Rules of Civil Procedure for motions to strike motions and memoranda . . . ."[50] Accordingly, the Court denies Defendants' Motion to Strike. The Court, however, will consider the document as Defendants' response to Plaintiff's Motion for Sanctions.

Plaintiff filed a Motion for Sanctions asserting that opposing counsel made a number of material misrepresentations to the Court in connection with Defendants' Motion to Dismiss.

---

[48] Plaintiff states that he should be afforded an opportunity to amend his Amended Complaint if his allegations are insufficient with regard to Defendant Forsee. Plaintiff, however, states that he seeks to conduct limited discovery on the issue of whether Forsee had additional contacts and activities with the State of Kansas. The assertion of personal jurisdiction over Defendant Forsee is not the issue. Thus, the Court will not allow Plaintiff leave to amend his Amended Complaint.

[49] He also requests oral argument on this motion which the Court denies.

[50] *Searcy v. Soc. Sec. Admin.*, 956 F.2d 278, 1992 WL 43490, at *2 (10th Cir. Mar. 2, 1992) (unpublished). *See also Nooruddin v. Comerica Inc.*, 2012 WL 1154497, at *2 (D. Kan. Apr. 5, 2012).

Plaintiff states that he brings his motion pursuant to D. Kan. Rule 11, the inherent power of the Court to issue sanctions,[51] and 28 U.S.C. § 1927. The Court denies Plaintiff's motion as it is improper for a number of reasons.

First, none of Plaintiff's purported bases for filing the motion are procedurally proper. Plaintiff asserts that he brings his motion pursuant to D. Kan. Rule 11—not Fed. R. Civ. P. 11.[52] District of Kansas Rule 11.1 is not a way to circumvent the requirements of Fed. R. Civ. P. 11. Instead, it is a local rule to be applied consistently with Fed. R. Civ. P. 11. Indeed, "Fed. R. Civ. P. 83 allows each United States district court the latitude to promulgate its own rules regarding its practice as long as these local rules do not conflict with the federal rules."[53] Federal Rule of Civil Procedure 11(c)(2) requires that any motion for sanctions be served on the opposing party twenty-one days prior to filing the motion with the court. In this case, Plaintiff did not follow this procedure. Instead, he simply filed this motion for sanctions. In addition, Plaintiff even states that he intends to file another motion for sanctions, pursuant to Fed. R. Civ. P. 11, on March 12, 2014, if necessary.[54] Although Plaintiff contends that the analysis regarding the propriety of sanctions under Rule 11 is materially different from the analysis of the instant motion (sanctions under D. Kan. Rule 11.1), he provides no authority for this proposition. In

---

[51] Although the Court may have the inherent power to issue sanctions, the Court declines to do so as Plaintiff does not identify any substantive reason for sanctions.

[52] The Court notes that there is no D. Kan. Rule 11—only D. Kan. Rule 11.1.

[53] *McHenry v. Aetna Life and Cas. Ins. Co.*, 930 F. 2d 34, 1991 WL 35191, at * (10th Cir. 1991). *See* Fed. R. Civ. P. 83(a)(1) ("A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§ 2072 and 2075, and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States."). D. Kan. Rule 11.1 conforms to the uniform numbering system of Fed. R. Civ. P. 11.

[54] Plaintiff requests that the Court not rule upon the instant motion until March 15, 2014, because he may file an additional motion pursuant to Fed. R. Civ. P. 11 on March 12. Plaintiff states in his current motion before the Court that he served Defendants with this additional motion (pursuant to Fed. R. Civ. P. 11) on February 10, 2014. The Court declines Plaintiff's request to not issue a ruling on this motion.

addition, he also states that the analysis of facts and legal authorities are essentially identical, and he states that he will request essentially the same sanctions in the motion to be filed as he has already requested with this motion. Plaintiff's motion is improper as he failed to follow Fed. R. Civ. P. 11 and serve Defendants twenty-days prior to filing the motion. And D. Kan. Rule 11.1(a)(2) requires that a party raise the issue of sanctions "by a *timely*-filed motion."

Plaintiff's reference to 28 U.S.C. § 1927 is also improper. This statute allows the court to impose sanctions if counsel "so multiplies the proceedings in any case unreasonably and vexatiously." Plaintiff does not assert that Defendants' counsel multiplied the proceedings or engaged in this type of conduct, and he never applies this standard to any of the facts in his motion for sanctions.[55] Instead, Plaintiff contends that Defendants' counsel has made material misrepresentations to the Court.[56] Thus, Plaintiff's reliance on § 1927 as a basis for sanctions is procedurally improper.

Second, Plaintiff's motion is substantively infirm. Many of the issues or "alleged misrepresentations" that Plaintiff highlights are irrelevant to the Court's analysis in considering Defendants' Motion to Dismiss. The Court will not hear a rehashing of issues that may or may not have occurred before the ALJ and ARB approximately eight years ago. The Court is considering Defendants' Motion to Dismiss—and the Court generally only considers the

---

[55] The Court notes that it appears that Plaintiff is bordering on multiplying the proceedings in this case unreasonably and vexatiously.

[56] The Court notes that Plaintiff attempts to assert the argument that Defendants multiplied the proceedings in his response to Defendants' Motion for Sanctions. Plaintiff did not include any basis for § 1927 in his Motion for Sanctions, and the Court will not consider his argument now. In any event, Plaintiff's arguments are baseless on this issue as well.

pleading when deciding such a motion.[57] The Court is also able to check citations and cases to determine if those cases actually stand for what the parties so contend.[58] In addition, it appears as if Plaintiff is merely reasserting arguments, or raising new arguments, in response to Defendants' motion to dismiss.[59] Accordingly, Plaintiff's motion does not raise appropriate issues for sanctions, and the Court denies his motion.[60]

      **IT IS ACCORDINGLY ORDERED** this 11th day of March, 2014, that Defendants' Motion to Dismiss (Doc. 29) is hereby **DENIED IN PART** and **GRANTED IN PART**.

      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions (Doc. 56) is **DENIED**.

---

[57] To the extent that Plaintiff asserts that this conduct is relevant to Defendants' assertion of laches as a defense, as noted above, the Court is not considering Defendants' defense of laches with regard to Defendants' Motion to Dismiss.

[58] Although parties may not make misrepresentations to the Court, parties may advocate for a position within a reasonable interpretation of the case.

[59] The Court already allowed Plaintiff to file a sur-reply to Defendants' Motion to Dismiss and also heard oral arguments on the motion. The Court also notes that Plaintiff filed a twenty-one page response to Defendants' Motion for Oral Argument in which he asserted numerous arguments directed toward Defendants' Motion to Dismiss.

[60] Plaintiff filed a response to Defendants' Motion to Strike arguing (1) that Defendants misrepresented the applicability of Fed. R. Civ. P. 11, (2) Defendants did indeed multiply the proceedings (although Plaintiff did *not* previously make this argument in his Motion for Sanctions), and (3) that Plaintiff's first and second sanctions motion (apparently to be filed on March 12) are not identical. Plaintiff's arguments are unpersuasive or are based on a misunderstanding of the applicable law. Thus, the Court will not address Plaintiff's arguments in detail. Plaintiff also contends that Defendants have made certain admissions regarding threats and harassment. The Court disagrees and will not treat Defendants' statements as admissions.

    Plaintiff continues to assert that almost every argument or representation made by Defendants are false, misleading, and an attempt to "harass" Plaintiff (which is allegedly in violation of § 1514A). The Court disagrees. Defendants are entitled to defend themselves in litigation, and they are also allowed to make arguments on their behalf to the Court. The mere fact that they are making an argument against Plaintiff or taking a different view than Plaintiff's does not make their argument misleading or false and does not constitute harassment. Plaintiff's arguments regarding Defendants' misleading, false, or harassing statements are becoming increasingly repetitive, frivolous, and are without merit.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Motion for Sanctions or, in the Alternative, for an Extension of Their Response Deadline (Doc. 61) is **DENIED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE